**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

| | | |
|---|---|---|
| Sharon Funderburk and Thomas Funderburk, | ) | Civil Case No.: 3:15-cv-04660-JMC |
| | ) | |
| Plaintiffs, | ) | |
| | ) | **ORDER AND OPINION** |
| v. | ) | |
| | ) | |
| South Carolina Electric & Gas Company, | ) | |
| The County of Lexington, SC, and | ) | |
| CSX Transportation, Inc., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| John P. Cantwell, | ) | Civil Case No.: 3:15-cv-04694-JMC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| South Carolina Electric and Gas Company, | ) | |
| The County of Lexington, SC, and | ) | |
| CSX Transportation, Inc., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| Robert Sherr and Kristi Sherr, | ) | Civil Case No.: 3:15-cv-04695-JMC |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| South Carolina Electric and Gas Company, | ) | |
| The County of Lexington, SC, and | ) | |
| CSX Transportation, Inc., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| Harry Crosby, | ) | Civil Case No.: 3:15-cv-04877-JMC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |

1

South Carolina Electric and Gas Company,          )
The County of Lexington, SC, and                  )
CSX Transportation, Inc.,                          )
                                                   )
    Defendants.                )
_____         )
Leonard Anderson and Karen Anderson,              )          Civil Case No: 3:15-cv-04887-JMC
                                                   )
    Plaintiffs,                 )
                                                   )
v.                                                 )
                                                   )
South Carolina Electric and Gas Company,          )
The County of Lexington, SC, and                  )
CSX Transportation, Inc.,                          )
                                                   )
    Defendants.                )
_____         )
Carol Bausinger and Scott Bausinger,              )          Civil Case No.: 3:15-cv-04888-JMC
                                                   )
    Plaintiffs,                 )
                                                   )
v.                                                 )
                                                   )
South Carolina Electric and Gas Company,          )
The County of Lexington, SC, and                  )
CSX Transportation, Inc.,                          )
                                                   )
    Defendants.                )
_____         )
Richard Miranda and Dorothy Miranda,              )          Civil Case No.: 3:15-cv-04892-JMC
                                                   )
    Plaintiffs,                 )
                                                   )
v.                                                 )
                                                   )
South Carolina Electric and Gas Company,          )
The County of Lexington, SC, and                  )
CSX Transportation, Inc.,                          )
                                                   )
    Defendants.                )
_____         )
Calvin Nesbit and Jane Nesbit,                    )          Civil Case No.: 3:15-cv-04893-JMC
                                                   )
    Plaintiffs,                 )
                                                   )

v.                                                )
                                                  )
South Carolina Electric and Gas Company,          )
The County of Lexington, SC, and                  )
CSX Transportation, Inc.,                         )
                                                  )
                    Defendants.                   )
_____)
Harry A. Plexico, Jr. and Margaret S. Plexico,    )        Civil Case No.: 3:15-cv-04894-JMC
                                                  )
                    Plaintiffs,                   )
                                                  )
v.                                                )
                                                  )
South Carolina Electric and Gas Company,          )
The County of Lexington, SC, and                  )
CSX Transportation, Inc.,                         )
                                                  )
                    Defendants.                   )
_____)
Faron Warwick and Dana Warwick,                   )        Civil Case No.: 3:15-cv-04897-JMC
                                                  )
                    Plaintiffs,                   )
                                                  )
v.                                                )
                                                  )
South Carolina Electric and Gas Company,          )
The County of Lexington, SC, and                  )
CSX Transportation, Inc.,                         )
                                                  )
                    Defendants.                   )
_____)
Jeanne West,                                      )        Civil Case No.: 3:15-cv-04898-JMC
                                                  )
                    Plaintiff,                    )
                                                  )
v.                                                )
                                                  )
South Carolina Electric and Gas Company,          )
The County of Lexington, SC, and                  )
CSX Transportation, Inc.,                         )
                                                  )
                    Defendants.                   )
_____)
Warren Boyeson and Christine M. Boyeson,          )        Civil Case No.: 3:15-cv-04920-JMC
                                                  )

3

|                                                              |   |                                      |
|--------------------------------------------------------------|---|--------------------------------------|
| Plaintiffs,                                                  | ) |                                      |
|                                                              | ) |                                      |
| v.                                                           | ) |                                      |
|                                                              | ) |                                      |
| South Carolina Electric and Gas Company,                     | ) |                                      |
| The County of Lexington, SC, and                             | ) |                                      |
| CSX Transportation, Inc.,                                    | ) |                                      |
|                                                              | ) |                                      |
| Defendants.                                                  | ) |                                      |

| Karl Hagenmeyer and Willette Hagenmeyer,                     | ) | Civil Case No.: 3:15-cv-04922-JMC    |
|                                                              | ) |                                      |
| Plaintiffs,                                                  | ) |                                      |
|                                                              | ) |                                      |
| v.                                                           | ) |                                      |
|                                                              | ) |                                      |
| South Carolina Electric and Gas Company,                     | ) |                                      |
| The County of Lexington, SC, and                             | ) |                                      |
| CSX Transportation, Inc.,                                    | ) |                                      |
|                                                              | ) |                                      |
| Defendants.                                                  | ) |                                      |

| Demario Benjamin and Kerochedia Amaker,                      | ) | Civil Case No.: 3:16-cv-01141-JMC    |
|                                                              | ) |                                      |
| Plaintiffs,                                                  | ) |                                      |
|                                                              | ) |                                      |
| v.                                                           | ) |                                      |
|                                                              | ) |                                      |
| South Carolina Electric and Gas Company,                     | ) |                                      |
| The County of Lexington, SC, and                             | ) |                                      |
| CSX Transportation, Inc.,                                    | ) |                                      |
|                                                              | ) |                                      |
| Defendants.                                                  | ) |                                      |

| Richard Green,                                               | ) | Civil Case No.: 3:16-cv-01143-JMC    |
|                                                              | ) |                                      |
| Plaintiff,                                                   | ) |                                      |
|                                                              | ) |                                      |
| v.                                                           | ) |                                      |
|                                                              | ) |                                      |
| South Carolina Electric and Gas Company,                     | ) |                                      |
| The County of Lexington, SC, and                             | ) |                                      |
| CSX Transportation, Inc.,                                    | ) |                                      |
|                                                              | ) |                                      |
| Defendants.                                                  | ) |                                      |

Plaintiffs filed these actions, currently consolidated for pretrial purposes, seeking monetary compensation from Defendants South Carolina Electric and Gas Company ("SCE&G"), The County of Lexington, SC ("Lexington County"), and CSX Transportation, Inc. ("CSX") for the damage caused to their homes by flood water released from Lake Murray Reservoir in October 2015.

This matter is before the court by way of CSX's Motions for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (3:15-cv-04660-JMC, ECF No. 165; 3:15-cv-04694-JMC, ECF No. 149; 3:15-cv-04695-JMC, ECF No. 148; 3:15-cv-04877-JMC, ECF No. 148; 3:15-cv-04887-JMC, ECF No. 149; 3:15-cv-04888-JMC, ECF No. 147; 3:15-cv-04892-JMC, ECF No. 148; 3:15-cv-04893-JMC, ECF No. 147; 3:15-cv-04894-JMC, ECF No. 147; 3:15-cv-04897-JMC, ECF No. 148; 3:15-cv-04898-JMC, ECF No. 148; 3:15-cv-04920-JMC, ECF No. 150; 3:15-cv-04922-JMC, ECF No. 149; 3:16-cv-01141-JMC, ECF No. 143; 3:16-cv-01143-JMC, ECF No. 143.[1]) Plaintiffs oppose the Motions for Summary Judgment "on the grounds that there are genuine disputes of material fact." (3:15-cv-04660-JMC, ECF No. 190 at 1.) For the reasons set forth below, the court **GRANTS** CSX's Motions for Summary Judgment.

## I.     RELEVANT BACKGROUND OF PENDING MOTIONS

Plaintiffs own homes in the Coldstream neighborhood located "on the edge of Lexington County[, South Carolina], between Old Bush River Road, Coldstream Drive, and Nursery Road." *Coldstream Neighborhood*, https://coldstreamhoa.org (last visited July 18, 2019). "SCE&G is a regulated public utility engaged in the generation, transmission, distribution and sale of electricity to . . . customers in South Carolina." *SCE&G*, https://www.sceg.com/about-us/newsroom/2018

---

[1] The court observes that CSX filed essentially the same substantive Motion in all the above-captioned cases. Accordingly, unless warranted by specific distinctions in the cases, the court will only cite hereinafter to documents filed in the lead *Funderburk* action.

/05/09/sce-g-replaces-more-than-40-percent-of-its-nuclear-project-capacity-with-purchase-of natural-gas-fired-power-plant (last visited July 1, 2019). "CSX[] is one of the largest rail transportation companies in the United States," providing "common carrier rail transportation services across a rail network consisting of approximately 21,000 railroad route miles." (ECF No. 165-1 at 9 ¶ 3.) And, Lexington County is a county located in South Carolina that is comprised of "a total area of 758 square miles (1,960 km), of which 699 square miles (1,810 km) is land and 59 square miles (150 km2) (7.8%) is water." Lexington County, https://en.wikipedia.org/wiki /Lexington_ County,_South_Carolina (last visited July 18, 2019) (citing 2010 Census Gazetteer Files, https://www2.census.gov/geo/docs/maps-data/data/gazetteer/counties_list_45.txt (last visited July 26, 2019). "The largest body of water [in Lexington County] is Lake Murray, while other waterways include Broad River, Saluda River and Congaree River." *Id.*

SCE&G operates the federally licensed Saluda Hydroelectric Project P-516 ("Saluda Hydro Project" or "Project") "located on the Saluda River in Richland, Lexington, Saluda, and Newberry Counties of South Carolina, approximately 10 miles west of the city of Columbia, and near the towns of Irmo, Lexington, and Chapin."[2] *E.g.*, *Long v. SCE&G*, C/A No. 3:15-cv-04890-JMC, ECF No. 115-2 at 13 (D.S.C. June 3, 2019). "The 2,420 square mile watershed area, drained by the Saluda River and its tributaries above Saluda Dam, provides water for Lake Murray and the Saluda Hydroelectric Plant." (*Id.*) "The Saluda Hydroelectric Project structures consist of a 7,800 foot long earth fill embankment dam (Saluda Dam [or Saluda River Dam, officially the Dreher

---

[2] "The Saluda Hydro-Electric Plant and Lake Murray were constructed in 1927–1930 by the Lexington Water Power Company, which merged in 1943 with" SCE&G. *Long v. SCE&G*, C/A No. 3:15-cv-04890-JMC, ECF No. 115-2 at 28 (D.S.C. June 3, 2019). On August 5, 1927, the Federal Energy Regulatory Commission ("FERC") "issued a 50-year license [to operate the Saluda Hydro Project] to Lexington Water Power Company." (*Id.* at 32.) "The license was transferred to [][SCE&G] on May 29, 1943." (*Id.*) "The project has been operating under annual licenses since the original license expired on August 4, 1977." (*Id.*)

Shoals Dam, commonly referred to as the Lake Murray Dam]), a backup dam, an emergency spillway with six Tainter gates, a powerhouse, five concrete intake towers and associated penstocks." (*Id.* at 13 ¶ 1.0.) "Lake Murray covers a normal maximum operating water surface area of 75 square miles or approximately 48,000 acres." (*Id.* at 17 ¶ 2.1.) "The normal maximum operating water surface elevation is 356.5' during the summer months, although the current license permits a maximum operating level (full pool) of El. 358.5'." (*Id.*)

SCE&G operates the Saluda Dam "primarily for hydroelectric power production as its Saluda Hydro facility, but outflow and storage can also be controlled by way of [the] six [T]ainter gates during flood events." (3:15-cv-04660-JMC, ECF No. 190-2 at 5.) "When inflow during major floods requires temporary storage above maximum operating pool level, releases are made through spillway gates to augment discharges through power turbines in order to lower the reservoir to required maximum pool level as soon as possible." (3:15-cv-04660-JMC, ECF No. 190-2 at 5.) "During this operation, spillway gates are opened gradually until the lake level begins to recede." (*Id.*) "As long as the reservoir level continues to rise[,] gate openings will be increased until all six spillway gates are wide open." (*Id.*)

"From October 1st through 5th, 2015, a combination of coincident atmospheric conditions, in combination with a plume of tropical moisture associated with Hurricane Joaquin, resulted in record rainfall over portions of South Carolina." (3:15-cv-04660-JMC, ECF No. 190-2 at 4.) Plaintiffs, as residents of Coldstream neighborhood along Rawls Creek,[3] experienced flooding beginning at around 5 or 6 a.m. on October 4, 2015. (*Id.* at 6.) The flooding completely destroyed

---

[3] "Rawls Creek is in Lexington County near the city of Irmo, northwest of Columbia." (3:15-cv-04660-JMC, ECF No. 190-2 at 3.) "The Rawls Creek watershed encompasses 10.4 square miles" and "flows generally southeastward and empties into the Saluda River." (*Id.* at 3, 4.) "The creek runs nearly 7 miles in length from its headwaters in Richland County to its mouth on the Saluda River." (*Id.* at 4.)

Plaintiffs' homes and their personal property. (*E.g.*, 3:15-cv-04660-JMC, ECF No. 132 at 4 ¶ 25.)

Because they believed damage to their real and personal property occurred as a result of SCE&G's failure to properly manage water levels at the Lake Murray Dam, Plaintiffs filed Complaints in the Lexington County Court of Common Pleas on November 10 and 12, 2015, alleging claims against SCE&G for negligence, trespass, strict liability, and inverse condemnation pursuant to South Carolina's eminent domain laws. (3:15-cv-04660-JMC, ECF No. 1-1.) On December 10 and 11, 2015, SCE&G filed Notices of Removal, removing Plaintiffs' actions to this court pursuant to 28 U.S.C. §§ 1331, 1367, 1441 & 1446, and provisions of the Federal Power Act, 16 U.S.C. §§ 791–828c.[4] (ECF No. 1.)

After the parties litigated the court's jurisdiction over the matter and conducted discovery, Plaintiffs filed Amended Complaints on October 4, 2017, and Second Amended Complaints on January 16, 2019, asserting individual claims of negligence, Fifth Amendment inverse condemnation, trespass, strict liability, and nuisance against SCE&G, CSX, and Lexington County for their perceived roles in the destruction of Plaintiffs' homes.[5] (3:15-cv-04660-JMC, ECF Nos. 64, 132.) Then, on May 30, 2019, the parties stipulated and/or consented "to the dismissal with

---

[4] The Federal Power Act of 1935 indicates congressional intent for "a broad federal role in the development and licensing of hydroelectric power." *California v. FERC*, 495 U.S. 490, 496 (1990).

[5] The court acknowledges that Plaintiffs attempted "to amend their Second Amended Complaint to change all references to the Fifth Amendment of the United States Constitution in the Inverse Condemnation cause of action to Article I Sec. 13 of the South Carolina Constitution and to remove the Inverse Condemnation cause of action in its entirety against Defendant CSX Transportation, Inc., such that Inverse Condemnation is only pending against Defendant the County of Lexington." (3:15-cv-04660-JMC, ECF No. 188.) However, the court denied those Motions without prejudice because Plaintiffs did not "articulate good cause for the late amendment of their pleadings." (*Id.* (citing *Wilson v. Jacobs*, C/A No. 0:14-4006-TMC, 2016 WL 690869, at *2 (D.S.C. Feb. 22, 2016) ("However, once a scheduling order has been entered and the time period to file amendments to the pleadings has expired, the party moving to amend must first satisfy Rule 16(b), which requires a movant to show 'good cause' for the amendment." (citing *Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008)))).)

prejudice of all claims" against SCE&G pursuant to Rule 41 of the Federal Rules of Civil Procedure. (3:15-cv-04660-JMC, ECF No. 159 at 1.) Thereafter, on June 3, 2019, CSX filed the instant Motions for Summary Judgment, wherein they argue that "there are no genuine issues of material fact and CSX[] is entitled to judgment as a matter of law." (3:15-cv-04660-JMC, ECF No. 165 at 6.) Plaintiffs filed Memorandums in Opposition to CSX's Motions for Summary Judgment on June 12, 2019, to which CSX filed Replies in Support of the Motions for Summary Judgment on June 16, 2019. (3:15-cv-04660-JMC, ECF Nos. 190, 195.)

The court heard argument from the parties on CSX's Motions at a hearing on June 17, 2019. (3:15-cv-04660-JMC, ECF No. 198.) The court considers the merits of CSX's Motions for Summary Judgment below.

## II.     JURISDICTION

The court has original jurisdiction over this matter under 28 U.S.C. § 1331 pursuant to Plaintiffs' claims for inverse condemnation against CSX under the Takings Clause of the Fifth Amendment to the United States Constitution. (*See* 3:15-cv-04660-JMC, ECF No. 132 at 9 ¶ 61 ("The unlawful seizure of Plaintiffs' property by Defendant CSX violates the Fifth Amendment of the United States Constitution.").) The court may properly hear Plaintiffs' state law claims for negligence, trespass, strict liability, and nuisance against CSX based on supplemental jurisdiction since these claims "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ."[6] 28 U.S.C. § 1367(a); *see also United Mine*

---

[6] In their briefs opposing summary judgment, Plaintiffs expressly relinquish their claims against CSX for inverse condemnation. (3:15-cv-04660-JMC, ECF No. 190 at 15.) Accordingly, because the parties do not dispute either the material facts or CSX's entitlement to judgment as a matter of law regarding the inverse condemnation causes of action, the court **GRANTS** CSX's Motion for Summary Judgment as to Plaintiffs' claims for inverse condemnation. The court's decision on whether to continue to exercise supplemental jurisdiction over Plaintiffs' state law claims for negligence, trespass, strict liability, and nuisance involves consideration of "the principles of

*Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966) (finding supplemental jurisdiction allows

parties to append state law claims over which federal courts would otherwise lack jurisdiction to

federal claims, so long as "[t]he state and federal claims . . . derive from a common nucleus of

operative fact"); *De La Rosa v. Reliable, Inc.*, 113 F. Supp. 3d 1135, (D.N.M. 2015) ("The court

can then exercise supplemental jurisdiction over other claims and parties that 'form part of the

same case or controversy under Article III . . . .'") (citing § 1367 & *United Mine Workers*, 383

---

economy, fairness, convenience and comity." *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988). *See also* 28 U.S.C. § 1367(c) (providing that a court "may decline to exercise supplemental jurisdiction over a claim . . . if: (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction"). Upon its review, the court is persuaded that "it would be [] an unnecessary expenditure of judicial resources . . . for the remaining claims to be moved to another court." *Lewis v. Univ. of Md., Balt.*, Civil No. SAG-12-298, 2012 WL 5193820, at *3 (D. Md. Oct. 18, 2012). To this point, these cases are approaching four (4) years of age. All Plaintiffs' claims against CSX are currently the subject of the same pending Motions for Summary Judgment, and if summary judgment is denied, jury selection is scheduled for August 6, 2019, and the trial of these matters is scheduled to begin in approximately three (3) weeks on August 12, 2019. Moreover, in the court's view, the substantive aspects of Plaintiffs' state law claims involve settled principles, are not novel or complex, and are predominated by the issue in CSX's Motions as to whether the remaining state law claims are preempted by federal law as specified in the Interstate Commerce Commission Termination Act. *See Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998) ("Because the remaining state law claims implicate the doctrine of preemption, we cannot say that the district court's exercise of supplemental jurisdiction in this case was an abuse of its discretion."); *Baylis v. Marriott Corp.*, 843 F.2d 658, 665 (2d Cir. 1988) ("One factor that may sometimes favor retaining pendent jurisdiction is when a state claim is closely tied to questions of federal policy and where the federal doctrine of preemption may be implicated." (citing *Gibbs*, 383 U.S. at 727)); *but see Ry. Labor Execs. Ass'n v. Pittsburgh & Lake Erie R.R. Co.*, 858 F.2d 936, 941–42 (3d Cir. 1988) ("State courts are competent to determine whether state law has been preempted by federal law and they must be permitted to perform that function in cases brought before them, absent a Congressional intent to the contrary."). Therefore, upon consideration of the foregoing, the court finds that considerations of judicial economy outweigh any concerns about comity and, therefore, the balance of factors weighs in favor of the court retaining supplemental jurisdiction over Plaintiffs' remaining state law claims. *Hartman v. Univ. of Md. at Balt.*, 595 F. App'x 179, 180 (4th Cir. 2014) (finding that the district court did not abuse its discretion in exercising supplemental jurisdiction over a state law claim "[g]iven the posture of the case, and the issues to be decided by the court").

U.S. at 725).

## III.  LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).  A genuine question of material fact exists where, after reviewing the record as a whole, the court finds that a reasonable jury could return a verdict for the non-moving party. *Newport News Holdings Corp. v. Virtual City Vision*, 650 F.3d 423, 434 (4th Cir. 2011).

In ruling on a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party.  *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123–24 (4th Cir. 1990).  The non-moving party may not oppose a motion for summary judgment with mere allegations or denials of the movant's pleading, but instead must "set forth specific facts" demonstrating a genuine issue for trial.  Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson*, 477 U.S. at 252; *Shealy v. Winston*, 929 F.2d 1009, 1012 (4th Cir. 1991).  All that is required is that "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 249.  "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion."  *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995).

## IV.  ANALYSIS

In light of the foregoing authorities, the court considers each of Plaintiffs' claims relevant

to CSX's Motion for Summary Judgment in turn below.

A.      The Parties' Arguments Regarding Preemption of Plaintiffs' Claims

CSX argues that it is entitled to summary judgment because "Plaintiffs' South Carolina tort law . . . claims impermissibly seek to regulate CSX[]'s railroad operations and thus are expressly preempted by Section 10501(b) of [the Interstate Commerce Commission Termination Act ("ICCTA") of 1995, 49 U.S.C. § 10101–16106]." (3:15-cv-04660-JMC, ECF No. 165 at 13.) In support of this argument, CSX asserts that the ICCTA both created the Surface Transportation Board ("STB") and granted the STB exclusive jurisdiction over the following:

> (1) transportation by rail carriers, and the remedies provided in this part [49 USCS §§ 10101 et seq.] with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and
>
> (2) the construction, acquisition, operation, abandonment, or discontinuance of . . . facilities, even if the tracks are located, or intended to be located, entirely in one State . . . .

(3:15-cv-04660-JMC, ECF No. 165 at 13–14 (citing 49 U.S.C. § 1302) (quoting 49 U.S.C. § 10501(b)).) CSX asserts that "the remedies provided under [[the] ICCTA] with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law." (3:15-cv-04660-JMC, ECF No. 165 at 14 (quoting 49 U.S.C. § 10501(b)).) CSX further asserts that its "rail infrastructure, including the Culverts and embankment, fall directly within ICCTA's preemptive scope over 'transportation by rail carriers' and the 'construction' or 'operation' of railroad tracks or facilities." (3:15-cv-04660-JMC, ECF No. 165 at 15 (citing 49 U.S.C. § 10501(b)(1) and (2)).) Based on the foregoing, CSX contends that because Plaintiffs' claims all allege the "failure to redesign and/or increase the size of the Culverts and embankment," the causes of action are preempted because they "impermissibly target rail 'transportation.'" (*Id.* at 16.)

Plaintiffs oppose CSX's Motion asserting that their claims "are not preempted by § 10501(b) of [the] ICCTA." (3:15-cv-04660-JMC, ECF No. 190 at 3.) More specifically, Plaintiffs assert that their claims for negligence, nuisance, trespass, and strict liability neither "seek[] to regulate railroad transportation" nor have the "intent to 'manage' or 'govern' the conventions of railroad transportation." (*Id.* at 4 (citing *Haley v. CSX Transp., Inc.*, No. 3:15-cv-5037-TLW, 2016 WL 11530255, at *2 (D.S.C. Oct. 26, 2016) ("[C]ongress narrowly tailored the ICCTA preemption provision to displace only 'regulation,' *i.e.*, those state laws that may reasonably be said to have the effect of 'managing' or 'governing' rail transportation, while permitting the continued application of laws having a more remote or incidental effect on rail transportation.")).) Plaintiffs further assert that their "claims directly relate to public health and safety," which are a class of claims that neither are preempted by the ICCTA nor impede a railroad's operating abilities. (3:15-cv-04660-JMC, ECF No. 190 at 4.) Lastly, Plaintiffs assert that the question of whether a tort claim should be preempted because it "unreasonably interfere[s] with rail transportation" is a jury question and not for the court to decide on summary judgment. (*Id.* at 5–6 (citing *PCS Phosphate Co. v. Norfolk S. Corp.*, 559 F.3d 212, 220–21 (4th Cir. 2009)).) Therefore, in accordance with the foregoing, Plaintiffs request that the court "deny summary judgment on the issue of preemption." (*Id.* at 6.)

B.    The Court's Review

1.    *Preemption Generally*

"Preemption[7] is a function of the Supremacy Clause of the United States Constitution,

---

[7] At the outset of its analysis, the court observes that neither party specified the kind of preemption at issue in this matter. In considering their arguments, it is apparent to the court that ordinary preemption is the appropriate concept. *See Lontz v. Tharp*, 413 F.3d 435, 440 (4th Cir. 2005) ("In assessing whether defendants have carried their burden, we may not conflate 'complete preemption' with 'conflict' or 'ordinary' preemption. While these two concepts are linguistically

which states that the Constitution, the laws of the United States, and all Treaties 'shall be the supreme Law of the Land.'" *Swinomish Indian Tribal Cmty. v. BNSF Ry. Co.*, 228 F. Supp. 3d 1171, 1179 (W.D. Wash. 2017) (quoting U.S. Const. art. VI, cl. 2). "The Supremacy Clause permits Congress to preempt state law in the legitimate exercise of its legislative authority." *Pere Marquette Hotel Partners, LLC v. United States*, (E.D. La. Mar. 10, 2010) (citing *La. Pub. Serv. Comm'n v. Fed. Commc'ns Comm'n*, 476 U.S. 355, 369 (1986)). "Under the Supremacy Clause, 'state laws that 'interfere with, or are contrary to the laws of [C]ongress, made in pursuance to the constitution' are invalid.'" *Swinomish Indian Tribal Cmty.*, 228 F. Supp. 3d at 1179 (quoting *Wis. Pub. Intervenor v. Mortier*, 501 U.S. 597, 604 (1991). "The critical question in any pre-emption analysis is always whether Congress intended that federal regulation supersede state law." *La.*

---

related, they are not as close kin jurisprudentially as their names suggest. Complete preemption is a 'jurisdictional doctrine,' while ordinary preemption simply declares the primacy of federal law, regardless of the forum or the claim." (citation omitted)); *SPPP, LLC v. Ayotte*, 488 F.3d 525, 534 (1st Cir. 2007) ("[T]he doctrine of complete preemption determines whether a federal court has jurisdiction over a claim, not whether a state enforcement action would be precluded on the merits by federal preemption."); *Bd. Of Selectmen of Grafton v. Grafton & Upton R.R. Co.*, C/A No. 12-cv-40164-TSH, 2013 WL 2285913, at *6 (D. Mass. May 22, 2013) ("[C]omplete preemption 'permits federal question-based removal of state[ ]law claims filed in state court.'" (citation omitted)). As an aside, the court observes that the findings of this Order do not necessitate a determination of whether complete preemption in relation to the ICCTA is applicable in this action. Even though the Fourth Circuit has not yet had an opportunity to consider whether the ICCTA completely preempts state law claims, it has suggested that district courts retain jurisdiction over disputes implicating the ICCTA. *See Norfolk S. Ry. Co. v. Balt. & Annapolis R.R.*, 715 F. App'x 244, 249 (4th Cir. 2017) (nonbinding unpublished decision) ("Sections 11704(c)(1) and 11704(c)(2), together, suggest federal courts retain jurisdiction over a broad range of disputes. We agree with the First, Fifth, and Sixth Circuits in concluding that federal courts retain original jurisdiction, concurrent with the STB, over disputes governed by the ICCTA."). The district courts in this Circuit considering the issue of complete preemption have reached differing results. *See City of Chesapeake v. Norfolk & Portsmouth Belt Line R.R. Co.*, C/A No. 2:09CV423, 2010 WL 11561914, at *4 (E.D. Va. Apr. 1, 2010) ("Thus, the ICCTA does not completely preempt state[]law claims because Congress allocated exclusive jurisdiction to the STB and not to the district courts."); *but see Skidmore v. Norfolk S. R.y. Co.*, C/A No. 2:18-cv-01308, 2019 WL 1748533, at *7 (S.D. W.Va. Apr. 18, 2019) (concluding that "because an adverse taking of rail property is preempted under the ICCTA, removal to federal court in this case is proper").

*Pub. Serv. Comm'n*, 476 U.S. at 369.

### 2. The ICCTA

"Congress established the Interstate Commerce Commission ["ICC"] in 1890, giving it broad authority to regulate many facets of the railroad industry, a major component of the nation's interstate transportation network." *Iowa, Chi. & E. R.R. Corp. v. Wash. Cty., Iowa*, 384 F.3d 557, 558 (8th Cir. 2004). "Ninety years later, to reverse the industry's severe decline, Congress in the Staggers Act of 1980 significantly reduced the ICC's regulatory authority." *Id.* "In 1995, convinced that even greater deregulation was needed, Congress enacted ICCTA, terminating the ICC altogether," replacing it with the STB, "a quasi-independent three-member body within the Department of Transportation." *Id.* at 558–59 (citing 49 U.S.C. §§ 701–703). In enacting the ICCTA, Congress granted the STB exclusive jurisdiction over –

> (1) transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and

> (2) the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State, . . . .

49 U.S.C. § 10501(b).

### 3. Preemption under the ICCTA

The ICCTA contains an express preemption provision providing that "[e]xcept as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation[8] are exclusive and preempt the remedies provided under Federal or State law."

---

[8] Under the ICCTA, the definition of "'transportation' includes–

49 U.S.C. § 10501(b)(2). "It is difficult to imagine a broader statement of Congress's intent to preempt state regulatory authority over railroad operations." *CSX Transp., Inc. v. Ga. Pub. Serv. Comm'n*, 944 F. Supp. 1573, 1581 (N.D. Ga. 1996). The preemption provision of ICCTA "is so certain and unambiguous as to preclude any need to look beyond that language for congressional intent." *Friberg v. Kansas City S. Ry. Co.*, 267 F.3d 439, 443 (5th Cir. 2001). *See also Cedarapids, Inc. v. Chi., Cent. & Pac. R.R. Co.*, 265 F. Supp. 2d 1005, 1013 (N.D. Iowa 2003) ("The Court's review of the nature and purpose of the ICCTA, as evidenced by both the legislative history and the plain language of the statute, leads the Court to conclude that, in enacting the ICCTA, Congress intended to occupy completely the field of state economic regulation of railroads.").

"Though the ICCTA's preemption language is broad, the [United States Court of Appeals for the] Fourth Circuit has noted that 'Congress narrowly tailored the ICCTA preemption provision to displace only 'regulation,' *i.e.* those state laws that may reasonably be said to have the effect of 'managing' or 'governing' rail transportation, while permitting the continued application of laws having a more remote or incidental effect on rail transportation.'" *Home & Indus. Mech. Supplies, Inc. v. CSX Transp., Inc.*, C/A No. 4:19-cv-00931-RBH, 2019 WL 3288618, at *2 (D.S.C. July 22, 2019) (quoting *PCS Phosphate Co., Inc.*, 559 F.3d at 218). *See also Delaware* v. *STB*, 859 F.3d 16, 19 (D.C. Cir. 2017) ("[S]tates retain certain traditional police powers over public health and

---

(A) a locomotive, car, vehicle, vessel, warehouse, wharf, pier, dock, yard, *property*, facility, instrumentality, *or equipment of any kind related to the movement of passengers or property, or both, by rail*, regardless of ownership or an agreement concerning use; and

(B) services related to that movement, including receipt, delivery, elevation, transfer in transit, refrigeration, icing, ventilation, storage, handling, and interchange of passengers and property; . . . .

49 U.S.C. § 10102(9) (emphasis added).

16

safety concerns, . . ." but "state or local statutes or regulations are preempted categorically if they 'have the effect of 'managing' or 'governing' rail transportation.'" (quoting *Fla. E. Coast Ry. Co. v. City of W. Palm Beach*, 266 F.3d 1324, 1331 (11th Cir. 2001))). "A state law tort claim seeking damages . . . constitutes a 'regulation,'" and "may be preempted by the ICCTA" even if it "does not seem regulatory on its face." *Waubay Lake Farmers Ass'n v. BNSF Ry. Co.*, Civ. No. 12-4179-RAL, 2014 WL 4287086, at *5 (D.S.D. Aug. 28, 2014) (citing *Kurns v. R.R. Friction Prods. Corp.*, 565 U.S. 625, 636 (2012)). "While the ICCTA's express preemption clause focuses on 'regulation,' the Fourth Circuit has recognized that a claim may be impliedly preempted if it 'unreasonably interfere[s] with rail transportation.'" *Home & Indus. Mech. Supplies, Inc.*, 2019 WL 3288618, at *2 (quoting *PCS Phosphate Co., Inc.*, 559 F.3d at 220–21) (internal quotation marks omitted).

### 4. Additional Background Relevant to Preemption Analysis

"CSX[] is one of the largest rail transportation companies in the United States." (3:15-cv-04660-JMC, ECF No. 165-1 at 9 ¶ 3.) "CSX[] provides common carrier rail transportation services across a rail network consisting of approximately 21,000 railroad route miles linking communities and commercial markets in 23 states . . . ." (*Id.*) "Across its Rail Network, CSX[] owns and maintains approximately 10,000 bridges and 40,000 culverts." (*Id.* ¶ 6.) "The CSX[] Rail Network includes the approximately 3.7 mile track in Irmo, Lexington County, South Carolina at issue . . . ." (*Id.* ¶ 7.) "The two culverts at issue are currently located at CSX[] railroad milepost SEC 1.64 (which was previously designated as railroad milepost C8.75) . . . ." (*Id.* at 10 ¶ 8.) "The Culverts were constructed through [] [an] embankment to allow drainage from Rawls Creek to flow underneath the railroad right-of-way to prevent overtopping." (*Id.* at 10–11 ¶ 11.) "Each Culvert consists of a corrugated metal pipe with an approximately 12-foot diameter that runs through the

entire width of the embankment underneath the Rail Line." (3:15-cv-04660-JMC, ECF No. 165-1 at 10–11 ¶ 11.)

In their Second Amended Complaints, Plaintiffs seek damages for negligence[9] alleging that CSX had "a duty to Plaintiffs . . . to properly design, *construct*, maintain, monitor, *operate*, warn, and/or otherwise safely manage the pipe and drain system" underneath their railroad tracks and allegedly breached that duty by failing "to properly design, *construct*, maintain, monitor, *operate*, warn, and/or otherwise safely manage the culvert and drain." (3:15-cv-04660-JMC, ECF No. 132 at 6 ¶ 40–7 ¶ 41 (emphasis added).) Plaintiffs further seek damages for trespass[10] asserting that CSX's "use, *negligent construction* and maintenance of the culvert and drain system . . . caused [both] an invasion of the [Plaintiffs'] interest in the[ir] exclusive possession of land" and "substantial damage to Plaintiffs' property." (*Id.* at 12 ¶¶ 81–82 (emphasis added).) Plaintiffs also seek damages for nuisance[11] contending that CSX's "use, *negligent construction* and maintenance

_____

[9] To assert liability based on a negligence claim in South Carolina, a plaintiff must show that (1) defendant owed a duty of care; (2) defendant breached this duty by a negligent act or omission; (3) defendant's breach was the proximate cause of plaintiff's injuries; and (4) plaintiff suffered injury or damages. *Dorrell v. S.C. DOT*, 605 S.E.2d 12, 15 (S.C. 2004) (citation omitted). "Whether the law recognizes a particular duty is an issue of law to be determined by the court." *Jackson v. Swordfish Inv., L.L.C.*, 620 S.E.2d 54, 56 (S.C. 2005) (citation omitted).

[10] In South Carolina, "[t]respass is any intentional invasion of the plaintiff's interest in the exclusive possession of his property." *West v. Newberry Elec. Coop.*, 593 S.E.2d 500, 503 (S.C. Ct. App. 2004) (citations omitted). "To constitute actionable trespass, a plaintiff must allege facts showing the requisite three elements of trespass—that the defendant took 'an affirmative act,' that 'the invasion of the land [was] intentional,' and that 'the harm caused [was] the direct result of that invasion.'" *Winley v. Int'l Paper Co.*, C/A No.: 2:09-2030-CWH, C/A No. 2:09-2031-CWH, 2012 WL 13047989, at *6 (D.S.C. Oct. 23, 2012) (quoting *Snow v. City of Columbia*, 409 S.E.2d 797, 802 (S.C. Ct. App. 1991)).

[11] "[N]uisance is a substantial and unreasonable interference with the plaintiff's use and enjoyment of his property." *Shaw v. Coleman*, 645 S.E.2d 252, 258 (S.C. 2007) (quoting *Silvester v. Spring Valley Country Club*, 543 S.E.2d 563, 566 (S.C. Ct. App. 2001)). "If a lawful business is operated in an unlawful or unreasonable manner so as to produce material injury or great annoyance to others or unreasonably interferes with the lawful use and enjoyment of the property of others, it will constitute a nuisance." *Id.* (quoting *LeFurgy v. Long Cove Club Owners Ass'n*, 443 S.E.2d 577, 579 (S.C. Ct. App. 1994)).

of the culvert and drain system . . . caused [both] a substantial and unreasonable interference with Plaintiffs' use and enjoyment of their property" and "substantial damage to Plaintiffs' property." (3:15-cv-04660-JMC, ECF No. 132 at 16 ¶¶ 116, 117.) Finally, Plaintiffs maintain that CSX is strictly liable[12] to them for failing "to properly *construct*, maintain, monitor, *operate*[,] and/or otherwise manage [an] abnormally dangerous culvert and drain system." (3:15-cv-04660-JMC, ECF No. 132 at 14 ¶ 101 (emphasis added).) The allegations within Plaintiffs' Second Amended Complaints clearly contend that CSX is liable for the "construction," and "operation" of the culvert and drain system underneath its railroad tracks. (*See id.* at 7 ¶ 41, 14 ¶ 101.)

Additionally, in support of their claims, Plaintiffs submitted expert opinions that expressly concluded:

> The replacement of the CSX railroad embankment and culvert with a trestle or clear span bridge type structure would mitigate any future impacts on upstream flooding due to the effects of backwater at that railroad crossing. (3:15-cv-04660-JMC, ECF No. 190-2 at 12 § 8 ¶ 5.)

> It is further my opinion to a reasonable degree of engineering certainty that had the two [CSX] culverts been repaired before October 2015, the Cold Stream neighborhood would not have experienced the amount of flooding it did. (3:15-cv-04660-JMC, ECF No. 190-4 at 10 ¶ 5.)

> It is my opinion to a reasonable degree of professional engineering certainty that, for the Plaintiff's properties that flooded due to the CSX Transportation, Inc., culvert pipes, . . . the relative high water marks from the railroad embankment back to the upstream reaches of the pond above Goldstone Road indicate these two

---

[12] Strict liability is the imposition of liability on a party without a finding of fault. *Snow v. City of Columbia*, 409 S.E.2d 797, 800 (S.C. Ct. App. 1991). The claimant need only prove that the tort occurred and that the defendant was responsible. *See Wallace v. A. H. Guion & Co.*, 117 S.E.2d 359, 361 (S.C. 1960) ("Under what has been called the rule of absolute or strict liability, one lawfully engaged in blasting operations is, according to the weight of authority, liable without regard to the question of whether or not he has been negligent, whereby his acts in casting rocks or other debris on adjoining or neighboring premises or highways he causes direct damage to property or causes direct injury to persons thereon."). South Carolina's common law recognition of strict liability is generally "limited to a few narrowly defined categories such as cattle trespass, public callings, certain kinds of nuisances, and ultra-hazardous activities." *Ravan v. Greenville Cnty.*, 434 S.E.2d 296, 304 (S.C. Ct. App. 1993) (citing *Snow*, 409 S.E.2d at 800).

culverts caused flooding from the railroad embankment all the way back beyond Goldstone Road. (*Id.* at ¶ 6.)

*5. The Court's Findings*

Upon its review, the court is persuaded that the allegations in Plaintiffs' Amended Complaints, when supplemented by the opinions of their experts, compel a finding that Plaintiffs' claims for negligence, trespass, strict liability, and nuisance are preempted under the ICCTA. To remedy the deficiencies in the culverts and resultant drainage system alleged by Plaintiffs, it appears uncontroverted that CSX would have to divert significant financial and other resources from its "current and anticipated railroad engineering, operations and rail transportation needs." (3:15-cv-04660-JMC, ECF No. 165-1 at 12 ¶ 17.) More specifically, CSX "estimates that replacing the [c]ulverts with a span bridge as suggested" by Plaintiffs' expert "would cost at least $7.5 million based on a typical cost of $15,000 per linear foot to construct a railroad span bridge." (*Id.* at 13.) Because it is CSX's construction and operation of culverts and resultant drainage system in this case which give rise to Plaintiffs' state law causes of action, the claims are exactly the type of attempt at managing and/or governing of railroad operations that is expressly preempted by the ICCTA.

In reaching this conclusion, the court found particularly enlightening the following observations from the district court in *Waubay Lake Farmers Ass'n*, a case in which plaintiffs had alleged deficiencies in a railroad's culverts and resultant water drainage system:

> Plaintiffs['] tort claims allege that BNSF has a duty "to maintain . . . and to alter the facilities to match current conditions" and "to construct culverts in its roadbed of a sufficient capacity to carry off the surface waters." . . . BNSF allegedly breached that duty by failing to reconstruct its facilities, culverts, and roadbed. Plaintiffs seek damages, an injunction, and an order requiring BNSF to replace Culvert 647.80 with a culvert with a higher capacity. This logically would require BNSF to halt use of its tracks to remove the existing culvert beneath the track and indeed beneath the current level of water, which likely would mean some demolition and rebuilding of its railway and roadbed. By requesting such relief[,]

> Plaintiffs seek to "manage or govern" how BNSF constructs its roadbed and operates its tracks by requiring replacement of a submerged culvert beneath the roadbed. . . . Thus, to the extent that Plaintiffs' claims are based on state law, such claims fall squarely within the express terms of the ICCTA's preemption clause. Plaintiffs may not use state common law and a state statute to regulate, and indeed seek to compel, BNSF's reconstruction of its culvert, roadbed, and tracks.

2014 WL 4287086, at *6.

In opposing application of preemption under the ICCTA, Plaintiffs mainly rely on two (2) cases: *Haley* and *PCS Phosphate Co.* *Haley* is distinguishable because the court was addressing "ICCTA preemption at the Rule 12 stage," as opposed to the instant actions' summary judgment posture. *Haley*, 2016 WL 11530255, at *3. As to *PCS Phosphate Co.*, the Fourth Circuit reviewed preemption under the ICCTA in the context of a breach of contract/breach of easement covenant claims and not as to state tort claims. *See, e.g.*, *PCS Phosphate Co.*, 559 F.3d at 218. In this regard, the Fourth Circuit concluded that contracts were not "presumptively regulatory" as required to implicate the ICCTA. *PCS Phosphate Co.*, 559 F.3d at 220 (additionally observing that "[t]he STB itself has emphasized that courts, not the STB, are the proper forum for contract disputes, even when those contracts cover subjects that seem to fit within the definition of 'rail transportation'" (citations omitted)). Moreover, while it has not addressed the specific tort claims at issue in this matter, the Fourth Circuit further acknowledged that other "courts have held that common law regulation through negligence and nuisance actions was preempted by the ICCTA." *PCS Phosphate Co.*, 559 F.3d at 220 (citing *Friberg v. Kan. City S. Ry. Co.*, 267 F.3d 439, 444 (5th Cir. 2001)).

In these matters, Plaintiffs seek to use state tort claims to regulate the manner in which CSX constructs and operates its culverts and resultant drainage system, which in turn would result in an economic impact on CSX. Therefore, Plaintiffs' state law claims against CSX stemming from the failure "to properly design, construct, maintain, monitor, operate, warn, and/or otherwise

safely manage" its culverts and resultant drainage system are preempted by the ICCTA.[13]  *E.g.*, *Jones Creek Inv'rs, LLC v. Columbia Cty., Ga.*, 98 F. Supp. 3d 1279, 1294 (S.D. Ga. 2015) ("JCI's state law claims against CSX stemming from the failure, construction, design, and operation of the culverts are preempted by the ICCTA.").  Accordingly, CSX is entitled to summary judgment as to Plaintiffs' claims for negligence, nuisance, trespass, and strict liability.[14]

## V.    CONCLUSION

For the foregoing reasons, the court hereby **GRANTS** CSX's Motions for Summary Judgment.  (3:15-cv-04660-JMC, ECF No. 165; 3:15-cv-04694-JMC, ECF No. 149; 3:15-cv-04695-JMC, ECF No. 148; 3:15-cv-04877-JMC, ECF No. 148; 3:15-cv-04887-JMC, ECF No. 149; 3:15-cv-04888-JMC, ECF No. 147; 3:15-cv-04892-JMC, ECF No. 148; 3:15-cv-04893-JMC, ECF No. 147; 3:15-cv-04894-JMC, ECF No. 147; 3:15-cv-04897-JMC, ECF No. 148; 3:15-cv-04898-JMC, ECF No. 148; 3:15-cv-04920-JMC, ECF No. 150; 3:15-cv-04922-JMC, ECF No. 149; 3:16-cv-01141-JMC, ECF No. 143; 3:16-cv-01143-JMC, ECF No. 143.)

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

July 26, 2019
Columbia, South Carolina

---

[13] While Plaintiffs may present their claims before the STB, they cannot do so here.  The court observes that in the unpublished *Norfolk S. Ry. Co. v. Balt. & Annapolis R.R.* decision referenced above, *supra* at 14 n.7, the Fourth Circuit did not suggest that district courts should continue to exercise jurisdiction over state claims found to be expressly preempted by the ICCTA.

[14] The court's decision that Plaintiffs' claims for negligence, nuisance, trespass, and strict liability are preempted under the ICCTA render it unnecessary for the court to address CSX's  alternative grounds for granting summary judgment.