IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Sharon Funderburk and Thomas Funderburk, ) | Civil Case No.: 3:15-cv-04660-JMC |
| ) | |
| Plaintiffs, ) | |
| ) | **ORDER AND OPINION** |
| v. ) | |
| ) | |
| South Carolina Electric & Gas Company, ) | |
| The County of Lexington, SC, and ) | |
| CSX Transportation, Inc., ) | |
| ) | |
| Defendants. ) | |
| ) | |
| John P. Cantwell, ) | Civil Case No.: 3:15-cv-04694-JMC |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| South Carolina Electric and Gas Company, ) | |
| The County of Lexington, SC, and ) | |
| CSX Transportation, Inc., ) | |
| ) | |
| Defendants. ) | |
| ) | |
| Robert Sherr and Kristi Sherr, ) | Civil Case No.: 3:15-cv-04695-JMC |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| South Carolina Electric and Gas Company, ) | |
| The County of Lexington, SC, and ) | |
| CSX Transportation, Inc., ) | |
| ) | |
| Defendants. ) | |
| ) | |
| Harry Crosby, ) | Civil Case No.: 3:15-cv-04877-JMC |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |

1

| | |
|---|---|
| South Carolina Electric and Gas Company, )<br>The County of Lexington, SC, and )<br>CSX Transportation, Inc., )<br>                            )<br>        Defendants. ) | |
| Leonard Anderson and Karen Anderson, )<br>                            )<br>        Plaintiffs, )<br>                            )<br>v. )<br>                            )<br>South Carolina Electric and Gas Company, )<br>The County of Lexington, SC, and )<br>CSX Transportation, Inc., )<br>                            )<br>        Defendants. ) | Civil Case No: 3:15-cv-04887-JMC |
| Carol Bausinger and Scott Bausinger, )<br>                            )<br>        Plaintiffs, )<br>                            )<br>v. )<br>                            )<br>South Carolina Electric and Gas Company, )<br>The County of Lexington, SC, and )<br>CSX Transportation, Inc., )<br>                            )<br>        Defendants. ) | Civil Case No.: 3:15-cv-04888-JMC |
| Richard Miranda and Dorothy Miranda, )<br>                            )<br>        Plaintiffs, )<br>                            )<br>v. )<br>                            )<br>South Carolina Electric and Gas Company, )<br>The County of Lexington, SC, and )<br>CSX Transportation, Inc., )<br>                            )<br>        Defendants. ) | Civil Case No.: 3:15-cv-04892-JMC |
| Calvin Nesbit and Jane Nesbit, )<br>                            )<br>        Plaintiffs, )<br>                            ) | Civil Case No.: 3:15-cv-04893-JMC |

| | |
|---|---|
| v. ) | |
| ) | |
| South Carolina Electric and Gas Company, ) | |
| The County of Lexington, SC, and ) | |
| CSX Transportation, Inc., ) | |
| ) | |
| Defendants. ) | |
| _____) | |
| Harry A. Plexico, Jr. and Margaret S. Plexico, ) | Civil Case No.: 3:15-cv-04894-JMC |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| South Carolina Electric and Gas Company, ) | |
| The County of Lexington, SC, and ) | |
| CSX Transportation, Inc., ) | |
| ) | |
| Defendants. ) | |
| _____) | |
| Carlo J. Seigfried, ) | Civil Case No.: 3:15-cv-04896-JMC |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| South Carolina Electric and Gas Company, ) | |
| The County of Lexington, SC, and ) | |
| CSX Transportation, Inc., ) | |
| ) | |
| Defendants. ) | |
| _____) | |
| Faron Warwick and Dana Warwick, ) | Civil Case No.: 3:15-cv-04897-JMC |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| South Carolina Electric and Gas Company, ) | |
| The County of Lexington, SC, and ) | |
| CSX Transportation, Inc., ) | |
| ) | |
| Defendants. ) | |
| _____) | |
| Jeanne West, ) | Civil Case No.: 3:15-cv-04898-JMC |
| ) | |

|                                                                                                        |   |                                    |
|--------------------------------------------------------------------------------------------------------|---|------------------------------------|
| Plaintiff,                                                                                             | ) |                                    |
|                                                                                                        | ) |                                    |
| v.                                                                                                     | ) |                                    |
|                                                                                                        | ) |                                    |
| South Carolina Electric and Gas Company, The County of Lexington, SC, and CSX Transportation, Inc.,    | ) |                                    |
|                                                                                                        | ) |                                    |
| Defendants.                                                                                            | ) |                                    |
| Warren Boyeson and Christine M. Boyeson,                                                               | ) | Civil Case No.: 3:15-cv-04920-JMC  |
|                                                                                                        | ) |                                    |
| Plaintiffs,                                                                                            | ) |                                    |
|                                                                                                        | ) |                                    |
| v.                                                                                                     | ) |                                    |
|                                                                                                        | ) |                                    |
| South Carolina Electric and Gas Company, The County of Lexington, SC, and CSX Transportation, Inc.,    | ) |                                    |
|                                                                                                        | ) |                                    |
| Defendants.                                                                                            | ) |                                    |
| Karl Hagenmeyer and Willette Hagenmeyer,                                                               | ) | Civil Case No.: 3:15-cv-04922-JMC  |
|                                                                                                        | ) |                                    |
| Plaintiffs,                                                                                            | ) |                                    |
|                                                                                                        | ) |                                    |
| v.                                                                                                     | ) |                                    |
|                                                                                                        | ) |                                    |
| South Carolina Electric and Gas Company, The County of Lexington, SC, and CSX Transportation, Inc.,    | ) |                                    |
|                                                                                                        | ) |                                    |
| Defendants.                                                                                            | ) |                                    |
| Lucas J. Snyder and Lesley M. Snyder,                                                                  | ) | Civil Case No.: 3:15-cv-04926-JMC  |
|                                                                                                        | ) |                                    |
| Plaintiffs,                                                                                            | ) |                                    |
|                                                                                                        | ) |                                    |
| v.                                                                                                     | ) |                                    |
|                                                                                                        | ) |                                    |
| South Carolina Electric and Gas and The County of Lexington, South Carolina,                           | ) |                                    |
|                                                                                                        | ) |                                    |
| Defendants.                                                                                            | ) |                                    |

| | | |
|---|---|---|
| Demario Benjamin and Kerochedia Amaker, | ) | Civil Case No.: 3:16-cv-01141-JMC |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| South Carolina Electric and Gas Company, The County of Lexington, SC, and CSX Transportation, Inc., | ) ) ) ) | |
| Defendants. | ) ) | |
| Ann Dennis, | ) | Civil Case No.: 3:16-cv-01142-JMC |
| Plaintiff, | ) ) ) | |
| v. | ) ) | |
| South Carolina Electric and Gas Company, The County of Lexington, SC, and CSX Transportation, Inc., | ) ) ) ) | |
| Defendants. | ) ) | |
| Richard Green, | ) | Civil Case No.: 3:16-cv-01143-JMC |
| Plaintiff, | ) ) ) | |
| v. | ) ) | |
| South Carolina Electric and Gas Company, The County of Lexington, SC, and CSX Transportation, Inc., | ) ) ) ) | |
| Defendants. | ) ) | |

Plaintiffs filed these actions, currently consolidated for pretrial purposes, seeking monetary compensation from Defendants South Carolina Electric and Gas Company ("SCE&G"), The County of Lexington, SC ("Lexington County"), and CSX Transportation, Inc. ("CSX") for the damage caused to their homes by flood water released from the Lake Murray Reservoir in October 2015.

This matter is before the court by way of Lexington County's Motions for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (3:15-cv-04660-JMC, ECF No. 166; 3:15-cv-04694-JMC, ECF No. 150; 3:15-cv-04695-JMC, ECF No. 149; 3:15-cv-04877-JMC, ECF No. 149; 3:15-cv-04887-JMC, ECF No. 150; 3:15-cv-04888-JMC, ECF No. 148; 3:15-cv-04892-JMC, ECF No. 149; 3:15-cv-04893-JMC, ECF No. 148; 3:15-cv-04894-JMC, ECF No. 148; 3:15-cv-04896-JMC, ECF No. 148; 3:15-cv-04897-JMC, ECF No. 149; 3:15-cv-04898-JMC, ECF No. 149; 3:15-cv-04920-JMC, ECF No. 151; 3:15-cv-04922-JMC, ECF No. 150; 3:15-cv-04926-JMC, ECF No. 128; 3:16-cv-01141-JMC, ECF No. 144; 3:16-cv-01142-JMC, ECF No. 153; 3:16-cv-01143-JMC, ECF No. 144.[1]) Plaintiffs oppose the Motions for Summary Judgment asserting that they should be denied. (3:15-cv-04660-JMC, ECF No. 189 at 1.) For the reasons set forth below, the court **GRANTS IN PART** Lexington County's Motions for Summary Judgment.

I. RELEVANT BACKGROUND OF PENDING MOTIONS

Plaintiffs own homes in the Coldstream neighborhood located "on the edge of Lexington County[, South Carolina], between Old Bush River Road, Coldstream Drive, and Nursery Road." *Coldstream Neighborhood*, https://coldstreamhoa.org (last visited July 18, 2019). "SCE&G is a regulated public utility engaged in the generation, transmission, distribution and sale of electricity to . . . customers in South Carolina." *SCE&G*, https://www.sceg.com/about-us/newsroom/2018/05/09/sce-g-replaces-more-than-40-percent-of-its-nuclear-project-capacity-with-purchase-of-natural-gas-fired-power-plant (last visited July 1, 2019). "CSX[] is one of the largest rail transportation companies in the United States," providing "common carrier rail transportation

---

[1] The court observes that Lexington County filed essentially the same substantive Motion in all the above-captioned cases. Accordingly, unless warranted by specific distinctions in the cases, the court will only cite hereinafter to documents filed in the lead *Funderburk* action.

services across a rail network consisting of approximately 21,000 railroad route miles." (3:15-cv-04660-JMC, ECF No. 165-1 at 9 ¶ 3.) And, Lexington County is a county located in South Carolina that is comprised of "a total area of 758 square miles (1,960 km), of which 699 square miles (1,810 km) is land and 59 square miles (150 km$^2$) (7.8%) is water." *Lexington County*, https://en.wikipedia.org/wiki /Lexington_ County,_South_Carolina (last visited July 18, 2019) (citing *2010 Census Gazetteer Files*, https://www2.census.gov/geo/docs/maps-data/data/gazetteer /counties_list_45.txt (last visited July 26, 2019). "The largest body of water [in Lexington County] is Lake Murray, while other waterways include Broad River, Saluda River[,] and Congaree River." *Id.*

SCE&G operates the federally licensed Saluda Hydroelectric Project P-516 ("Saluda Hydro Project" or "Project") "located on the Saluda River in Richland, Lexington, Saluda, and Newberry Counties of South Carolina, approximately 10 miles west of the city of Columbia, and near the towns of Irmo, Lexington, and Chapin."[2] *E.g.*, *Long v. SCE&G*, C/A No. 3:15-cv-04890-JMC, ECF No. 115-2 at 13 (D.S.C. June 3, 2019). "The 2,420 square mile watershed area, drained by the Saluda River and its tributaries above Saluda Dam, provides water for Lake Murray and the Saluda Hydroelectric Plant." (*Id.*) "The Saluda Hydroelectric Project structures consist of a 7,800 foot long earth fill embankment dam (Saluda Dam [or Saluda River Dam, officially the Dreher Shoals Dam, commonly referred to as the Lake Murray Dam]), a backup dam, an emergency spillway with six Tainter gates, a powerhouse, five concrete intake towers and associated

---

[2] "The Saluda Hydro-Electric Plant and Lake Murray were constructed in 1927–1930 by the Lexington Water Power Company, which merged in 1943 with" SCE&G. *Long v. SCE&G*, C/A No. 3:15-cv-04890-JMC, ECF No. 115-2 at 28 (D.S.C. June 3, 2019). On August 5, 1927, the Federal Energy Regulatory Commission ("FERC") "issued a 50-year license [to operate the Saluda Hydro Project] to Lexington Water Power Company." (*Id.* at 32.) "The license was transferred to [][SCE&G] on May 29, 1943." (*Id.*) "The project has been operating under annual licenses since the original license expired on August 4, 1977." (*Id.*)

7

penstocks." (*Id.* at 13 ¶ 1.0.) "Lake Murray covers a normal maximum operating water surface area of 75 square miles or approximately 48,000 acres." (*Id.* at 17 ¶ 2.1.) "The normal maximum operating water surface elevation is 356.5' during the summer months, although the current license permits a maximum operating level (full pool) of El. 358.5'." (*Id.*)

SCE&G operates the Saluda Dam "primarily for hydroelectric power production as its Saluda Hydro facility, but outflow and storage can also be controlled by way of [the] six [T]ainter gates during flood events." (3:15-cv-04660-JMC, ECF No. 190-2 at 5.) "When inflow during major floods requires temporary storage above maximum operating pool level, releases are made through spillway gates to augment discharges through power turbines in order to lower the reservoir to [the] required maximum pool level as soon as possible." (3:15-cv-04660-JMC, ECF No. 190-2 at 5.) "During this operation, spillway gates are opened gradually until the lake level begins to recede." (*Id.*) "As long as the reservoir level continues to rise[,] gate openings will be increased until all six spillway gates are wide open." (*Id.*)

"From October 1st through 5th, 2015, a combination of coincident atmospheric conditions, in combination with a plume of tropical moisture associated with Hurricane Joaquin, resulted in record rainfall over portions of South Carolina." (3:15-cv-04660-JMC, ECF No. 190-2 at 4.) Plaintiffs, as residents of the Coldstream neighborhood along Rawls Creek,[3] experienced flooding beginning at around 5:00 or 6:00 a.m. on October 4, 2015. (*Id.* at 6.) The flooding completely destroyed Plaintiffs' homes and their personal property. (*E.g.*, 3:15-cv-04660-JMC, ECF No. 132 at 4 ¶ 25.)

---

[3] "Rawls Creek is in Lexington County near the city of Irmo, northwest of Columbia." (3:15-cv-04660-JMC, ECF No. 190-2 at 3.) "The Rawls Creek watershed encompasses 10.4 square miles" and "flows generally southeastward and empties into the Saluda River." (*Id.* at 3, 4.) "The creek runs nearly 7 miles in length from its headwaters in Richland County to its mouth on the Saluda River." (*Id.* at 4.)

8

Because they believed damage to their real and personal property occurred as a result of SCE&G's failure to properly manage water levels at the Lake Murray Dam, Plaintiffs filed Complaints in the Lexington County Court of Common Pleas on November 10 and 12, 2015, alleging claims against SCE&G for negligence, trespass, strict liability, and inverse condemnation pursuant to South Carolina's eminent domain laws. (3:15-cv-04660-JMC, ECF No. 1-1.) On December 10 and 11, 2015, SCE&G filed Notices of Removal, removing Plaintiffs' actions to this court pursuant to 28 U.S.C. §§ 1331, 1367, 1441 and 1446, and provisions of the Federal Power Act, 16 U.S.C. §§ 791–828c.[4] (ECF No. 1.)

After the parties litigated the court's jurisdiction over the matter and conducted discovery, Plaintiffs filed Amended Complaints on October 4, 2017,[5] and Second Amended Complaints on January 16, 2019, asserting individual claims of negligence, Fifth Amendment inverse condemnation, trespass, strict liability, and nuisance against SCE&G, CSX, and Lexington County for their perceived roles in the destruction of Plaintiffs' homes.[6] (3:15-cv-04660-JMC, ECF Nos. 64, 132.) Then, on May 30, 2019, the parties stipulated and/or consented "to the dismissal with

---

[4] The Federal Power Act of 1935 indicates congressional intent for "a broad federal role in the development and licensing of hydroelectric power." *California v. FERC*, 495 U.S. 490, 496 (1990).

[5] The court observes that Plaintiffs did not amend their Complaint in *Snyder v. SCE&G*, C/A No. 3:15-cv-04926-JMC.

[6] The court acknowledges that Plaintiffs attempted "to amend their Second Amended Complaint to change all references to the Fifth Amendment of the United States Constitution in the Inverse Condemnation cause of action to Article I Sec. 13 of the South Carolina Constitution and to remove the Inverse Condemnation cause of action in its entirety against Defendant CSX Transportation, Inc., such that Inverse Condemnation is only pending against Defendant the County of Lexington." (3:15-cv-04660-JMC, ECF No. 188.) However, the court denied those Motions without prejudice because Plaintiffs did not "articulate good cause for the late amendment of their pleadings." (*Id.* (citing *Wilson v. Jacobs*, C/A No. 0:14-4006-TMC, 2016 WL 690869, at *2 (D.S.C. Fed. 22, 2016) ("However, once a scheduling order has been entered and the time period to file amendments to the pleadings has expired, the party moving to amend must first satisfy Rule 16(b), which requires a movant to show 'good cause' for the amendment." (citing *Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008)))).)

prejudice of all claims" against SCE&G pursuant to Rule 41 of the Federal Rules of Civil Procedure. (3:15-cv-04660-JMC, ECF No. 159 at 1.) Thereafter, on June 3, 2019, Lexington County filed the instant Motions for Summary Judgment. (3:15-cv-04660-JMC, ECF No. 166.) Plaintiffs filed Memorandums in Opposition to Lexington County's Motions for Summary Judgment on June 12, 2019, to which Lexington County filed Replies in Support of the Motions for Summary Judgment on June 17, 2019. (3:15-cv-04660-JMC, ECF Nos. 189, 196.)

The court heard argument from the parties on Lexington County's Motions at a hearing on June 17, 2019. (3:15-cv-04660-JMC, ECF No. 198.) The court considers the merits of Lexington County's Motions for Summary Judgment below.

## II. JURISDICTION

The court has original jurisdiction over this matter under 28 U.S.C. § 1331 pursuant to Plaintiffs' claims for inverse condemnation against Lexington County under the Takings Clause of the Fifth Amendment to the United States Constitution. (*See* 3:15-cv-04660-JMC, ECF No. 132 at 8 ¶ 54 ("The unlawful seizure of Plaintiffs' property by the County violates the Fifth Amendment of the United States Constitution.").) The court may properly hear Plaintiffs' state law claims for negligence, trespass, strict liability, and nuisance against Lexington County based on supplemental jurisdiction since these claims "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ." 28 U.S.C. § 1367(a); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966) (finding supplemental jurisdiction allows parties to append state law claims over which federal courts would otherwise lack jurisdiction to federal claims, so long as "[t]he state and federal claims . . . derive from a common nucleus of operative fact"); *De La Rosa v. Reliable, Inc.*, 113 F. Supp. 3d 1135, 1152 (D.N.M. 2015) ("The court can then exercise supplemental jurisdiction over other claims and

10

parties that 'form part of the same case or controversy under Article III . . . .'" (citing 28 U.S.C. § 1367, U*nited Mine Workers*, 383 U.S. at 725)).

## III.    LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). A genuine question of material fact exists where, after reviewing the record as a whole, the court finds that a reasonable jury could return a verdict for the non-moving party. *Newport News Holdings Corp. v. Virtual City Vision*, 650 F.3d 423, 434 (4th Cir. 2011).

In ruling on a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123–24 (4th Cir. 1990). The non-moving party may not oppose a motion for summary judgment with mere allegations or denials of the movant's pleading, but instead must "set forth specific facts" demonstrating a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson*, 477 U.S. at 252; *Shealy v. Winston*, 929 F.2d 1009, 1012 (4th Cir. 1991). All that is required is that "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 249. "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995).

## IV.    ANALYSIS

In light of the foregoing authorities, the court considers each of Plaintiffs' claims relevant

11

to Lexington County's Motions for Summary Judgment in turn below.[7]

A. <u>Fifth Amendment Inverse Condemnation</u>

  *1. The Parties' Arguments*

Plaintiffs assert Fifth Amendment inverse condemnation claims against Lexington County, alleging that it unlawfully seized Plaintiffs' property without just compensation "by allowing the [flood] water to back up from the neighboring creek through the pipe and drain system and onto Plaintiffs' property." (3:15-cv-04660-JMC, ECF No. 132 at 8 ¶¶ 51–54.)

Lexington County contends that it is not liable to Plaintiffs for inverse condemnation because they can only demonstrate "mere failures to act, which are insufficient to prove a cause of action for inverse condemnation." (3:15-cv-04660-JMC, ECF No. 166-1 at 18 (citing *Hawkins v. City of Greenville*, 594 S.E.2d 557, 563 (S.C. 2004); *Berry's On Main, Inc. v. City of Columbia*, 281 S.E.2d 796, 797 (S.C. 1981); *Gray v. S.C. Dep't of Highways & Pub. Transp.*, 427 S.E.2d 899, 902 (S.C. Ct. App. 1993)).) More specifically, Lexington County asserts that there is neither evidence nor an allegation that it "took any affirmative action that contributed to the flooding that occurred in the Coldstream neighborhood [] on October 4,[]2015." (*Id.* at 19.)

Plaintiffs oppose summary judgment on their inverse condemnation claims, asserting that there are genuine issues of material fact as to whether Lexington County (1) let its drainage system deteriorate prior to the October 2015 flooding and/or (2) "knew of the drainage issues and chose

---

[7] The court observes that Plaintiffs did not provide any argument in their briefs opposing summary judgment as to their claims for nuisance and strict liability. Then, at the motions hearing, Plaintiffs' counsel expressly relinquished these claims agreeing "that the causes of action for nuisance and strict liability do not lie against the county." (3:15-cv-04660-JMC, ECF No. 236 at 61:17–21.) Accordingly, because the parties do not dispute either the material facts or Lexington County's entitlement to judgment as a matter of law regarding the nuisance and strict liability causes of action, the court **GRANTS** Lexington County's Motion for Summary Judgment as to Plaintiffs' claims for nuisance and strict liability.

not to spend an adequate amount of money on fixing the issues." (3:15-cv-04660-JMC, ECF No. 189 at 16–17.)

2. *The Court's Review*

"Inverse condemnation is 'a cause of action against a governmental defendant to recover the value of property which has been taken in fact by the governmental defendant, even though no formal exercise of the power of eminent domain has been attempted by the taking agency.'" *United States v. Clarke*, 445 U.S. 253, 257 (1980) (quoting D. Hagman, *Urban Planning and Land Development Control Law* 328 (1971)). "Inverse condemnation actions implicate rights protected by the Takings Clause of the Fifth Amendment to the United States Constitution," extended to states by the Fourteenth Amendment. *Hammes v. City of Davenport*, 381 F. Supp. 3d 1038, 1043 (S.D. Iowa 2019). Specifically, the Takings Clause of the Fifth Amendment mandates that "private property [shall not] be taken for public use, without just compensation."[8] U.S. Const. amend. V. "When there is no formal exercise of eminent domain, a 'taking' allegation is a claim for inverse condemnation." *Mays v. Tenn. Valley Auth.*, 699 F. Supp. 2d 991, 1026 (E.D. Tenn. 2010) (citing *Cary v. United States*, 552 F.3d 1373, 1376 (Fed. Cir. 2009)).

"A claim for inverse condemnation involves a two-part test that can be characterized as a causation prong and an appropriation prong." *Id.* (citations omitted). "As to the causation prong,

---

[8] "[A] government violates the Takings Clause when it takes property without compensation, and [] a property owner may bring a Fifth Amendment claim under [42 U.S.C.] § 1983 at that time." *Knick v. Township of Scott*, 139 S. Ct. 2162, 2177 (2019). The court observes that for pleading purposes, Plaintiffs did not have to specifically invoke § 1983 in their Second Amended Complaints. *See Johnson v. City of Shelby*, 574 U.S. 10, 135 S. Ct. 346, 347 (2014) ("[N]o heightened pleading rule requires plaintiffs seeking damages for violations of constitutional rights to invoke § 1983 expressly in order to state a claim." (citing *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993) (a federal court may not apply a standard "more stringent than the usual pleading requirements of Rule 8(a)" in "civil rights cases alleging municipal liability")).

a property loss compensable as a taking only results when the government intends to invade a protected property interest or the asserted invasion is the 'direct, natural, or probable result of an authorized activity and not the incidental or consequential injury inflicted by the action.'" *Id.* (quoting *Ridge Line, Inc. v. United States*, 346 F.3d 1346, 1355–56 (Fed. Cir. 2003)). "As to the appropriation prong, '[e]ven where the effects of the government action are predictable, to constitute a taking, an invasion must appropriate a benefit to the government at the expense of the property owner, or at least preempt the owner's right to enjoy his property for an extended period of time, rather than merely inflict an injury that reduces its value.'" *Id.* (quoting *Ridge Line, Inc.*, 346 F.3d. at 1356).

In these cases, Plaintiffs base their inverse condemnation claims on Lexington County's alleged failure to address/fix drainage issues. Specifically, Plaintiffs argue that "[b]efore the [October 2015] flood, Lexington County was aware of at least three drainage problems within the Coldstream neighborhood: (1) inadequate detention ponds; (2) aging pipes; and (3) homes built too close to the creek." (3:15-cv-04660-JMC, ECF No. 189 at 8 (citing ECF No. 189-1 at 60:14–62:13).) Moreover, Plaintiffs argue that "Lexington County knew Coldstream had drainage problems, residents had been filing complaints regarding drainage problems, and the drainage system had aging pipes that were causing sink holes." (*Id.* at 10 (referencing ECF No. 189-3).) As a result of the foregoing, Plaintiffs argue that "[a] jury could infer an affirmative act from the fact that Lexington County knew there was a problem that could cause issues for downstream residents" and "chose not to spend an adequate amount of money on fixing the issues." (*Id.* at 17.)

Upon its review, the court finds that as a matter of law Plaintiffs cannot create a genuine issue of material fact as to their claims for inverse condemnation by demonstrating that Lexington County failed to maintain, operate, or repair the drainage system. This is because "[o]n a [Fifth

14

Amendment] takings theory, the government cannot be liable for failure to act, but only for *affirmative acts* by the government."[9] *St. Bernard Parish Gov't v. United States*, 887 F.3d 1354, 1360 (Fed. Cir. 2018) (emphasis added). In this regard, Plaintiffs fail to cite any Fifth Amendment takings case that equates the failure to act with an affirmative act.[10] Further, Plaintiffs do not cite to any case where a government actor incurred Fifth Amendment takings liability based on its inaction. Therefore, even after viewing the evidence in the light most favorable to Plaintiffs, the court concludes that Lexington County did not engage in any affirmative acts substantiating Plaintiffs' claims for inverse condemnation. *Cf. Cary*, 552 F.3d at 1376 ("Whether a taking under the Fifth Amendment has occurred is a question of law with factual underpinnings." (citing *Alves v. United States*, 133 F.3d 1454, 1456 (Fed. Cir. 1998)). Therefore, Lexington County is entitled to summary judgment on Plaintiffs' claims for inverse condemnation. *E.g.*, *St. Bernard Parish*,

---

[9] As support for this principle, the Federal Circuit in *St. Bernard Parish* observed the following:

> In *United States v. Sponenbarger*, 308 U.S. 256, 60 S. Ct. 225, 84 L. Ed. 230 (1939), the government built a flood protection system. The plaintiff complained that the system was inadequate to protect the plaintiff's property from flooding. In finding that there was no taking, the Supreme Court held that "[w]hen undertaking to safeguard a large area from existing flood hazards, the Government does not owe compensation under the Fifth Amendment to every landowner which it fails to or cannot protect." *Id.* at 265, 60 S. Ct. 225. Similarly, in *Georgia Power Co. v. United States*, 633 F.2d 554 (Ct. Cl. 1980), cert. denied, 450 U.S. 981, 101 S. Ct. 1515, 67 L. Ed .2d 815 (1981), Georgia Power brought a takings claim asserting the government took its power line easement by permitting sailboat masts to intrude into the portion of the easement over a government reservoir. Finding no takings liability for failure to regulate sailboat mast heights, the Court of Claims explained that "issuance of such regulations is merely a discretionary act, and a taking may not result from this discretionary inaction" absent a duty to act. *Id.* at 527.

887 F.3d at 1361–62.

[10] The court observes that even though Plaintiffs expressly allege Fifth Amendment inverse condemnation claims in their Second Amended Complaints, the parties' arguments as to this claim only cite to state court decisions implicating state law. (*See* 3:15-cv-04660-JMC, ECF Nos. 166-1 at 18–19, 189 at 15–18.)

887 F.3d at 1360 ("While the theory that the government failed to maintain or modify a government-constructed project may state a tort claim, it does not state a takings claim."), 1362 ("The failure of the government to properly maintain the MRGO channel or to modify the channel cannot be the basis of takings liability. Plaintiffs' sole remedy for these inactions, if any, lies in tort.").

B. <u>Supplemental Jurisdiction as to Remaining Claims</u>

Plaintiffs' Fifth Amendment inverse condemnation claims were the sole federal claims remaining in these cases. Because these claims are no longer part of the instant actions, the court must now decide whether it should continue to exercise supplemental jurisdiction over Plaintiffs' state law claims for negligence and trespass.

Generally, a federal district court may exercise supplemental jurisdiction over state law "claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). However, a district court is not obligated to exercise supplemental jurisdiction, and a district court "may decline to exercise supplemental jurisdiction over a claim" upon dismissal of "all claims over which it has original jurisdiction." *See* § 1367(c) (providing that a court "may decline to exercise supplemental jurisdiction over a claim . . . if: (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction"). In this regard, after dismissing all of the federal claims in a case, a district court has three options: (1) "dismiss the pendent state law claims without prejudice"; (2) "remand the state[]law claims to the state court"; or (3) "decide the merits of the state law claims." *Farlow v. Wachovia Bank of*

*N.C., N.A.*, 259 F.3d 309, 316–17 (4th Cir. 2001).

A district court has broad discretion in deciding whether to dismiss, remand, or retain a case after relinquishing all federal claims in the case.[11] *See, e.g., Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639–41 (2009); *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995). In determining whether to retain, remand, or dismiss the state law claims, a district court should examine the "convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." *Shanaghan*, 58 F.3d at 110 (citing *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *Growth Horizons, Inc. v. Delaware County*, 983 F.2d 1277, 1284 (3d Cir. 1993)). "There are *no* situations wherein a federal court *must* retain jurisdiction over a state law claim, which would not by itself support jurisdiction." *Shanaghan*, 58 F.3d at 110 (4th Cir. 1995) (alteration in original). *See also Carnegie-Mellon Univ.*, 484 U.S. at 350 n.7 ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state[]law claims.").

---

[11] The court observes that even though the majority of the Fourth Circuit's cases on this issue are unpublished, the Fourth Circuit tends to be consistent in its holdings. In the vast majority of cases, the Fourth Circuit holds that the district court did not abuse its discretion in deciding to dismiss, remand, or retain the state law claims. Rather, the Fourth Circuit tends to focus its analysis on whether the district court recognized it had discretion and considered whether or not to dismiss, retain, or remand the state law claims. *See Farrell v. Macy's Retail Holdings, Inc.*, 645 F. App'x 246, 249 (4th Cir. 2016) (vacating a district court's dismissal of the state law claims because the court's order was silent regarding its consideration of whether to exercise supplemental jurisdiction over the state law claims.). Thus, regardless of whether the court decides to remand or retain the state law claims, the court must provide an analysis of its decision to exercise supplemental jurisdiction in its order. *Id.* (citing *Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 366 (4th Cir. 2012) (stating that a "district court's failure to recognize that it had discretion is an abuse of discretion")).

Upon consideration of the foregoing, the court observes that there are both reasons to exercise supplemental jurisdiction and reasons to decline to exercise supplemental jurisdiction over Plaintiffs' claims for negligence and trespass. As for reasons to exercise supplemental jurisdiction, the court observes these cases are approaching four (4) years of age and all of Plaintiffs' claims against Lexington County are currently the subject of the same pending Motions for Summary Judgment. Additionally, if summary judgment is denied, jury selection is scheduled for August 6, 2019, and the trial of these matters is scheduled to begin in eleven (11) days on August 12, 2019.

However, as for reasons to not exercise supplemental jurisdiction, the court observes that it has granted summary judgment on all claims over which it has original jurisdiction. Moreover, state law tort claims generally involving non-diverse parties are the kind of disputes over which federal courts typically decline to exercise jurisdiction. *E.g.*, *Smith v. Ray*, 409 F. App'x 641, 651 (4th Cir. 2011) (finding no abuse of discretion in dismissal without prejudice of state tort claims upon dismissal of federal claims). The court is further persuaded that Plaintiffs' arguments, that they were owed duties of care by Lexington County pursuant to the Lexington County Stormwater Management Ordinance, do not involve settled principles regarding the standard of care and are novel and/or complex issues of state law. (3:15-cv-04660-JMC, ECF No. 189 at 8.) Finally, it appears to the court that the current posture of these matters compels the abstinence of supplemental jurisdiction because the cases are now truly a local dispute between Lexington County and its citizens. *See Miller v. D.C. Water & Sewer Auth.*, No. 17-cv-0840 (KBJ), 2018 WL 4762261, at *15 (D.D.C. Oct. 2, 2018) ("It is a common practice of the judges in this district to decline to exercise supplemental jurisdiction over local matters if the federal claims over which the court has original jurisdiction are dismissed." (citation omitted)).

Therefore, after balancing the relevant factors, the court finds that they weigh in favor of it declining the exercise supplemental jurisdiction over Plaintiffs' remaining state law claims for negligence and trespass. *See Gunsay v. Mozayeni*, 695 F. App'x 696, 703 (4th Cir. 2017) (holding that when the remaining state law claims raise complex or novel issues of state law and arise under a dispute in which federal courts traditionally have declined jurisdiction over, "coupled with the fact that the district court properly dismissed Plaintiffs' federal claims that served as the basis of the court's original jurisdiction, [] these two bases provide[] an adequate basis for the district court to exercise its discretion to decline to retain jurisdiction over Plaintiffs' state[]law claims" (citing *Farlow*, 259 F.3d at 316–17)).

V. CONCLUSION

For the foregoing reasons, the court hereby **GRANTS IN PART** Lexington County's Motions for Summary Judgment as to Plaintiffs' claims for Fifth Amendment inverse condemnation, nuisance, and strict liability. (3:15-cv-04660-JMC, ECF No. 166; 3:15-cv-04694-JMC, ECF No. 150; 3:15-cv-04695-JMC, ECF No. 149; 3:15-cv-04877-JMC, ECF No. 149; 3:15-cv-04887-JMC, ECF No. 150; 3:15-cv-04888-JMC, ECF No. 148; 3:15-cv-04892-JMC, ECF No. 149; 3:15-cv-04893-JMC, ECF No. 148; 3:15-cv-04894-JMC, ECF No. 148; 3:15-cv-04896-JMC, ECF No. 148; 3:15-cv-04897-JMC, ECF No. 149; 3:15-cv-04898-JMC, ECF No. 149; 3:15-cv-04920-JMC, ECF No. 151; 3:15-cv-04922-JMC, ECF No. 150; 3:15-cv-04926-JMC, ECF No. 128; 3:16-cv-01141-JMC, ECF No. 144; 3:16-cv-01142-JMC, ECF No. 153; 3:16-cv-01143-JMC, ECF No. 144.) The court **DECLINES** to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims for negligence and trespass. The court **REMANDS** Plaintiffs' claims of negligence and trespass to the Lexington County Court of Common Pleas for further proceedings. The Clerk of Court is directed to mail a certified copy of this Order of remand to the

Clerk of Court of the Lexington County Court of Common Pleas.

    **IT IS SO ORDERED.**

                                              *J. Michelle Childs*
                                              United States District Judge

August 1, 2019
Columbia, South Carolina